GREEN, Judge,
delivered the opinion of the court:
The material facts alleged in the petition are in substance as follows:
In April 1938 there was a cause pending in this court entitled The Seminole Nation v. United States, in which Paul M. Neibell was attorney of record for the plaintiff, and a cause entitled The Wichita and Affiliated Tribes, etc. v. United States, in which C. C. Calhoun was the at *167 torney of record. Mr. C. C. Calhoun was also of counsel in the 8'envinóle case.
The plaintiff herein being requested by the said C. C. Calhoun to print, did undertake and agree with the said C. C. Calhoun to print, and did in fact print at the request of the said C. C. Calhoun the brief in each of the above-mentioned cases. The plaintiff’s charge for printing the Seminole Nation brief (L 89) was $135.50 and for printing the Wichita-Caddo brief (E 542) was $96.25, or a total of $231.75 for both briefs, which said charge was a fair and reasonable charge.
In order that payment might be made of the aforesaid publishing charge through authorization of the Indian Bureau of the Department of the Interior and in accordance with the long existing custom prevailing in respect of such matters, the said Calhoun requested the plaintiff to deliver to him receipted bills, for voucher purposes only, for each of the aforesaid printing charges, and the plaintiff did, on the 23rd day of July 1938, although its said accounts had not, nor had any part thereof, then in fact been paid, deliver to the said Calhoun such receipted bills upon the understanding and agreement that the said Calhoun would collect said funds as the funds of the plaintiff and would deliver the Government’s check therefor, duly endorsed, to the plaintiff upon receipt thereof. That said practice is one which has long prevailed in many branches of the United States Government.
In due course the aforesaid bills were approved by the Indian Bureau and transmitted to the Comptroller General of the United States for payment.
On the 2nd day of August, 1938, the said Calhoun died leaving due and owing to the United States Government certain unpaid income taxes. The Comptroller General did purport to offset against the said unpaid taxes the amount in his hands which had been transmitted to him by the Indian Bureau for payment to Calhoun, although the said Calhoun had no beneficial interest in said funds whatsoever; and although said Comptroller General was advised of that fact, the said Comptroller General refused to pay the plaintiff herein the said amount so transmitted; that *168 said funds in truth and fact belonged to the plaintiff and that said Calhoun and his estate had no interest therein except as a trustee for the plaintiff.
Wherefore,-the plaintiff asks judgment against the defendant for $231.75.
The defendant demurs to the petition on the ground that it does not state a cause of action.
The argument for defendant presents more specifically two grounds for the demurrer. The first is that there is no privity of contract between the plaintiff and the United States. This was not necessary. Attention is also called to the provisions of the Act of March 2, 1934, 48 Stat., 362, 377, authorizing payment to the attorneys for the Seminole Indians “in such sums as may be necessary to reimburse the attorneys for such proper and necessary expenses as may have- been -incurred” in the prosecution of the-Suit, and-also that the applicable appropriation act of June 22, 1936, 49 Stat. 1597, 1621, making provision for the payment of expenses incurred in the Wichita-Caddo case only authorized payment “for costs and expenses already incurred and those to be incurred by their duly authorized attorneys in the prosecution of the claims of said Indians now pending in the Court of Claims.”
We do not think these matters constitute any defense. The general rule is that in the absence of circumstances showing a different intention or understanding, property paid for with the money or assets of one person but the title thereto being taken in the name of another, is subject to a resulting trust arising by operation of law in favor of the person furnishing the consideration, and the party thus obtaining title is a trustee for the person paying the consideration. 65 Corpus Juris, section 154, pages 381, 382, and 383,-and cases-cited. Amessential element to the creation of the trust is that the grantee does not receive and hold the legal title as beneficial owner and this appears clearly in the case before us. It was definitely understood and agreed that Calhoun should have no beneficial interest in the money to be paid for printing. Whatever interest he acquired in this payment was solely for the benefit of the plaintiff.
*169 The statutory provisions above set out authorized payment not merely of the expenses paid, but instead, of expenses “incurred” or “to be incurred” by the attorney for the Indians. When Calhoun contracted for the printing, the expense thereof was “incurred” or “to be incurred” and the money to be paid was due him. The Government completed all arrangements for payment and he was entitled -to receive the fund when he died; but in the meantime and before the Government had taken any proceedings to apply the fund to his income tax, he had divested himself of all beneficial interest therein. As Calhoun had an interest in the property merely as trustee the fund in fact belonged to plaintiff and the defendant has taken plaintiff’s property and applied it to Calhoun’s debt.
It is also urged that the claim of the United States to this money was prior to the claim of' the plaintiff under revised statutes, section 3466; Title 31 U. S. C. Sec. 191, but this contention assumes that the money or debt due from the Government belonged to Calhoun when appropriated; whereas the fact is, as shown above, that Calhoun had then no beneficial interest in it, and for that reason the Government had no right to appropriate this fund to the payment of Calhoun’s income tax.
It is objected that the transaction between Calhoun and the plaintiff was in effect an assignment or transfer to plaintiff of Calhoun’s claim against the Government and that such an assignment is void under the provisions of the U. S. Code, Title 31, Sec. 203. This is immaterial, for a resulting trust always has the same effect in the end as would a valid assignment. A more direct answer to the objection is that the petition does not allege any assignment or transfer, and there was none. The plaintiff obtained title through the law with reference to trusts, and- the contention made overlooks the well-established rule that the statute does not embrace cases where there has been a transfer of title by operation of law. See National Bank of Commerce v. Downie, 218 U. S. 345, and cases cited. It was said in Western Pacific Co. v. United States, 268 U. S. 271:
The object of this section is to protect the Government and prevent frauds upon the Treasury. It applies *170 only to cases of voluntary assignment of demands against the Government, and does not embrace cases where there has been a transfer of title by operation of law.
In this case by operation of law a trust resulted without there being any assignment or transfer. Consequently the statute making transfers and assignments of claims against the United States void has no application.
It is also said that the plaintiff did not pay or furnish anything to the Government which formed the original consideration for the payment of the fund. This is clearly an error because the plaintiff furnished the printing which was the consideration of the debt and delivered vouchered receipts for voucher purposes only for the printing charge, upon the understanding Calhoun would collect the funds due and deliver the Government checks therefor, all of which the petition alleges was a custom or practice which has long prevailed in many branches of the United States Government.
It is also said that if there was any trust it was an express one. We have shown in a prior part of the opinion that all of the forms necessary to create a resulting trust had been consummated; but, if there was an express trust, we think this is entirely immaterial as the plaintiff’s rights would remain fixed by operation of law.
The demurrer must be overruled.
The argument of defendant is not made merely on the assumption that for the purpose of the demurrer the allegations of the petition are true. It seems to practically concede that these allegations actually relate the facts in the case. If this is the situation, there is no need to refer the case to a commissioner for findings upon the facts; and unless the defendant should within ten days advise the court of its desire to offer some evidence, the defendant will be considered to have elected to stand on the demurrer and judgment will be rendered for the plaintiff in the amount claimed in the petition.
It is so ordered.
LittletoN, Judge, concurs in the foregoing opinion and in the following concurring opinion.